UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**HEATHER ANGER,**

    Plaintiff,

vs.                                                      Case No. 17-cv-
                                                                Hon.
                                                                Mag.

**GENERAL MOTORS LLC,**
*a foreign limited liability company*,

    Defendant.
_____

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Benjamin I. Shipper (P77558)
Irina L. Vaynerman (0396759)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500/Fax (248) 258-7881
dgordon@deborahgordonlaw.com
bshipper@deborahgordonlaw.com
ivaynerman@deborahgordonlaw.com
_____

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Heather Anger, by her attorneys Deborah Gordon Law**,** complains against Defendant as follows:

**Jurisdiction and Parties**

1. This is an action for violations of the Equal Pay Act, arising out of Heather Anger's employment relationship with Defendant.

2. Plaintiff's claims arise out of Defendant discriminating against Plaintiff on the basis of her gender by providing her with less compensation than similarly situated male employees performing the same or similar duties.

3. Plaintiff Heather Anger (hereinafter "Plaintiff") is a resident of Michigan and resides in the Eastern District of Michigan.

4. Defendant General Motors LLC (hereinafter "Defendant GM" or "Defendant") is a Michigan limited liability company that maintains its principal place of business and conducts business in the Eastern District of Michigan.

5. In June 2009, General Motors Corporation filed for Chapter 11 bankruptcy protection. As part of the bankruptcy reorganization, certain assets were sold to General Motors Company, the entity now known and reorganized as General Motors LLC. Although Defendant's legal entity name has changed in the past decade, all references to Defendant in this Complaint will be to "Defendant GM" or "Defendant."

6. The events underlying this Complaint occurred in the Eastern District of Michigan.

7. This Court has federal subject matter jurisdiction pursuant to 28 USC § 1331 and 28 USC § 1343.

8. Pursuant to 28 USC § 1391, venue is proper in this Court.

## Background Facts

9. The automotive manufacturing industry, particularly the clay modeling and design sector, is one of the last old boys' clubs—an industry and sector that was historically male dominated, and continues to be so.

10. Clay modelers or sculptors serve an integral role in the design process because they are responsible for creating three dimensional clay prototypes of automobiles before companies, like GM, produce vehicles.

11. Historically, automotive companies would hire male creative sculptors who often did not have degrees in their fields. In the past decade or so, however, automotive companies, including GM, prefer candidates who have educational training or have obtained automotive clay modeling certificates. *See* "Macomb Community College Partners with Industry to Help Resurrect A Dying 'Art' Critical to Automakers," Macomb Community College, Apr. 27, 2015 http://www.macomb.edu/news/2015/04/NR-Digital-schulptor.html.

12. Women only hold approximately 26.7% of jobs in the motor vehicle and motor vehicle equipment manufacturing industry. *See* Bureau of Labor Statistics, "Table 18: Employed Persons by Detailed Industry, Sex, Race, and Hispanic or Latino Ethnicity, 2015," Labor Force Statistics from the Current Population Survey (2016), http://www.bls.gov/cps/cpsaat18.htm.

13. In a survey conducted by the Deloitte consulting firm, respondents reported that the automotive industry was the *least* successful industry at attracting and retaining female employees. *See* Deloitte, *2015 Women in Manufacturing Study: Exploring the Gender Gap* (2015), https://www2.deloitte.com/content/dam/Deloitte/us/Documents/manufacturing/us-mfg-women-in-manufacturing-2015-study.pdf.

14. Unsurprisingly, because of the significant gender disparity in employment, women in this industry are significantly underpaid compared to similarly situated male employees. *See id.*

15. Plaintiff, a female creative clay sculptor, is one of the women in this industry who is directly affected by this gender pay gap.

16. Plaintiff was hired by Defendant GM September 2005 as a creative sculptor, in a full-time salaried position.

17. Plaintiff is a highly skilled and highly qualified creative sculptor. She obtained her Bachelor's Degree in Fine Arts, with Honors, from the College for Creative Studies in May, 2005. Plaintiff obtained her Master's Degree in Fine Arts from the Cranbrook Academy of Art in May 2010. Plaintiff has also served an adjunct professor at the College for Creative Studies because of her exceptional sculpting and artistic ability.

18. Plaintiff's outstanding sculpting ability coupled with her educational pedigree set her apart from many of the other male creative sculptors who are employed by GM and do not even have a single degree in their field.

19. From the date of Plaintiff's hire, her performance was satisfactory or better. She has received numerous honors and awards for her sculpting and artistic work.

20. In fact, in or about the Spring or Summer of 2013, Defendant asked Plaintiff to serve on a special, elite team of sculptors to create the GM Test Track ride at Epcot Theme Park in Disney World. Plaintiff's performance was exceptional and for her contributions, Plaintiff received a hand written letter from the lead designer on the special project.

21. Defendant GM maintains a salary structure to denote job responsibilities and related pay ranges. Salaried employees are assigned a "level" of responsibility.

22. Employees who are creative sculptors may be Level 5, 6A, 6B, 7A, or 7B before being promoted to either Model or Group Managers at Level 8.

23. Plaintiff was initially hired as a Level 5 creative sculptor.

24. Throughout the first eight years of Plaintiff's employment, Defendant paid Plaintiff less than similarly situated male creative sculptors. Defendant also transferred Plaintiff back and forth between several different modeling and design

studios, unlike similarly situated male clay sculptors who had more consistency in which studio they worked and which supervisor they had. Because of the constant transferring between studios, Plaintiff's opportunities for advancement within each studio and in the company more broadly were fewer than similarly situated male clay sculptors.

25. During Plaintiff's employment with GM, she has experienced harassment in the workplace because of her sex. Coworkers have made lewd sexual comments, have questioned Plaintiff's ability to sculpt because she is female, and have made statements objectifying women.

26. Male creative sculptors have told Plaintiff that she is not welcome in the studio because she is a woman.

27. Employees who engage in this type of harassment have not been disciplined or reprimanded by supervisors or Defendant in any way.

28. When Plaintiff first began working at GM, Plaintiff's male Group Manager and the male creative sculptors in her group did not permit her to do the same type of work that the male creative sculptors were doing.

29. Although Plaintiff had received positive performance reviews from her supervisors, Defendant consistently paid Plaintiff less than similarly situated male creative sculptors. Plaintiff also received fewer promotions and opportunities for advancement than similarly situated male creative sculptors.

30. Plaintiff began to notice that male creative sculptors who had just been hired and had less experience were given more opportunities than she was to serve as "leads" on projects.

31. As a "lead," creative sculptors manage the project they are assigned by moving along the timeline for production; managing day to day sculpting; assisting other sculptors on the team; and communicating with the designers, engineers, and studio shop to ensure model quality and to ensure that milestone deadlines are met.

32. Plaintiff was not given an opportunity to serve in a "lead" role until September 2012, seven years after she began working at GM.

33. In the past three years, Defendant has continued to pay Plaintiff less than similarly situated male creative sculptors and given her fewer promotions and opportunities for advancement.

34. In or about August 2014, Defendant transferred Plaintiff to advanced studio exteriors ("advanced studio"), a studio which focuses on sculpting the exterior portion of automobiles made by Defendant.  Plaintiff received a pay increase and was promoted to a Level 6B.  Nonetheless, Defendant was still paying Plaintiff less than similarly situated male clay sculptors and giving Plaintiff fewer promotions and/or opportunities for advancement.

35. In advanced studio, Plaintiff continued to be harassed by the male creative sculptors in her studio.

36. Plaintiff asked her Senior Manager William Mattana whether she could transfer studios because of the continued harassment she endured.

37. Once Plaintiff's Group Manager learned that Plaintiff had complained of gender discrimination to the Senior Manager, the General Manager retaliated by giving Plaintiff her first and only negative performance review.

38. In January 2015, Defendant transferred Plaintiff to the Buick exterior studio where she served as the new clay lead. She did not receive a pay raise or an increase in her "level" designation.

39. Plaintiff's new Group Manager in the Buick exterior studio was Ken Michie.

40. Plaintiff's coworkers continued to harass her, tell lewd sexual jokes, and objectify women.

41. Plaintiff's performance in her lead role was exceptional and she received positive feedback from several managers, including Michie.

42. In March 2016, Plaintiff had a performance evaluation with Michie and was given a slight pay raise, but her "level" designation remained the same, even though she was qualified to be promoted to a higher level.

43. Plaintiff complained to Michie about the fact that she had not been promoted to a Level 7.

44. Plaintiff also complained to Michie because her pay was under "market rate," the industry standard used by GM to award its male clay sculptors appropriate pay rates. Michie stated that he was offended by Plaintiff's statements.

45. Two days later, Michie called Plaintiff into a conference room and told Plaintiff that she was not entitled to a pay increase commensurate with market rate, even though she was in fact entitled to it. Michie refused to award Plaintiff a pay increase.

46. In May 2016, Michie was replaced with another supervisor, Keith Gawron.

47. By this time, Plaintiff was slated to have a lead position in the Buick exterior studio.

48. On or about August 22, 2016, Gawron gave Plaintiff's lead role to a less qualified and less skilled male sculptor, Kirk Mattana.

49. On or about September 6, 2016, Gawron instructed Plaintiff that she was being moved to the global architecture studio because she is a woman and the studio needed "a female."

50. Defendant then transferred Plaintiff to the global architecture studio.

51. Plaintiff's Senior Manager, Sam Vitale, approved of Plaintiff's transfer to the global architecture studio.

52. The global architecture studio is understood by creative sculptors to be a less prestigious studio compared to the exterior studios that require more advanced sculpting work.

53. Male creative sculptors are paid more as sculptors in exterior studios than male creative sculptors in the global architecture studio because more advanced sculpting is required in the exterior studios.

54. On October 3, 2016, Plaintiff went to Human Resources to complain about the fact that she was being paid less than similarly situated male coworkers and to complain about the overall sexist environment in sculpting at GM.

55. An employee in Defendant's Human Resources Department admitted that Plaintiff was correct about the pay discrepancy and acknowledged that the sexist environment existed in sculpting at GM. The Human Resources employee also stated that she believed that Plaintiff's career has suffered because she has been moved to and from different studios on multiple occasions. However, the Human Resources employee told Plaintiff that Defendant GM and Human Resources could not resolve these issues.

56. On October 6, 2016, Plaintiff complained to a manager about the fact that she was being paid less than similarly situated male sculptors.

57. The manager acknowledged that this pay discrepancy exists on all levels in GM design and sculpting.

58. On November 14, 2016, the manager advised Plaintiff to read the book, *Seducing the Boys Club*, in order to learn how to advance at GM. Nina DiSesa, the author of *Seducing the Boys Club*, instructs her reader that the "playing field is not level" when it comes to women advancing in business, and DiSesa advises the female reader to "seduce [male managers and coworkers] without sex and manipulate them without malice" to succeed.

59. In the past 11 years, because of Plaintiff's gender, she has been transferred to nine studios and has had ten managers. In the past year, Plaintiff has already had three different managers.

60. Lesser qualified male sculptors receive promotions and favorable assignments, while Plaintiff has been given fewer promotions and less favorable assignments.

61. Defendant GM also discriminated against Plaintiff on the basis of her gender by failing to promote her.

62. Plaintiff has continuously expressed an interest to her current and previous supervisors to be promoted to a Level 7 sculptor, a position for which she is well qualified. The position would have been a promotion from her Level 6B role and would have conferred increased compensation, increased exposure to

leadership opportunities, and represented a stepping-stone towards a management-level role. She spoke with at least three different supervisors to express her interest about this promotion.

63. However, when Plaintiff has expressed interest in the position to her managers, she has been pointedly ignored. When Plaintiff asked specifically what she could do to obtain this promotion, one of her Group Managers, Ken Michie, did not give her any specific instructions and his reaction indicated to Plaintiff that she would not be considered for this promotion. Plaintiff was further discouraged from approaching him about future promotional or career-enhancing opportunities.

64. Defendant GM also denied Plaintiff benefits in the form of yearly bonuses which are awarded by Group Managers to sculptors in the studio, and are calculated based on an employee's level and performance and the company's profits or "Corporate Performance."

65. On information and belief, Defendant GM systematically compensates its female creative sculptors at a lower rate in terms of base pay and yearly bonuses and provides fewer opportunities for advancement and promotion compared to similarly situated male creative sculptors who perform the same or similar work.

66. On November 3, 2016, Plaintiff filed an EEOC Charge of Discrimination based on sex discrimination and retaliation.

## Count I
### *Violations of the Equal Pay Act*
### *Discrimination and Retaliation*

67. Plaintiff repeats and realleges all foregoing paragraphs as if they were set forth fully herein.

68. Defendant has discriminated against Plaintiff within the meaning of the Equal Pay Act of 1963 ("EPA") by providing her with lower pay than similarly situated male colleagues on the basis of her gender, female, even though Plaintiff performed similar duties requiring the same skill, effort, and responsibility of male counterparts.

69. Plaintiff is an "employee" as defined by 29 USC § 203(e); 29 USC § 206(a); 29 USC § 206(d); 29 CFR § 1620.1.

70. Defendant is an "employer" under the EPA, 29 USC § 203(d).

71. Plaintiff is a female creative sculptor employee who received and continues to receive less compensation than similarly situated male creative sculptor employees for performing substantially equal work that requires equal skill, effort, and responsibility, and was/is performed under similar working conditions.

72. Defendant violated the EPA by paying lower wages to Plaintiff, a female employee, than it paid to male employees for equal work that required

equal skill, effort, and responsibility and that were/are performed under similar working conditions. *See* 29 USC § 206(d)(1).

73. The term "wages" encompasses all payments made to an employee as remuneration for employment. *See* 29 CFR § 1620.10.

74. Defendant retaliated against Plaintiff for attempting to enforce her rights pursuant to the EPA.

75. Plaintiff was replaced as the lead in the Buick exterior studio by a male who received more compensation than Plaintiff for performing substantially equal work.

76. Defendant discriminated against Plaintiff by subjecting her to discriminatory pay, discriminatory denials of bonuses and other compensation incentives, discriminatory denial of promotions, and other forms of discrimination in compensation in violation of the Equal Pay Act.

77. The differential in pay between male and female employees was not due to seniority, merit, quantity or quality of production, or a factor other than sex, but was due to gender.

78. Defendant caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based on gender, in violation of the EPA.

79. The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a). Because Defendant has willfully

violated the EPA, a three year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

80. As a result of Defendant's conduct as alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to: lost earnings and earning capacity, lost career opportunities, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, mental anguish, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

## Relief Requested

Plaintiffs demand judgment against Defendant as follows:

A. Legal Relief:

1. Compensatory damages in whatever amount Plaintiff is found to be entitled;

2. Exemplary damages in whatever amount Plaintiff is found to be entitled;

3. Punitive damages in whatever amount Plaintiff is found to be entitled;

4. Prejudgment interest;

5. Liquidated damages in whatever amount Plaintiff is found to be entitled; and

6. An award of interest, costs, reasonable attorney fees, and expert witness fees.

B. Equitable Relief:

1. An order from this placing Plaintiff in the position she would have been in had there been no wrongdoing by Defendant;

2. An injunction from this Court prohibiting any further acts of wrongdoing or retaliation against Plaintiff;

3. An injunction from this Court prohibiting Defendant from engaging in policies, patterns and/or practices that discriminate against female creative sculptor employees because of their gender;

4. An injunction from this Court requiring Defendant to develop and institute accurate and validated standards for evaluating performance, determining pay, and making promotion decisions;

5. An order from this Court requiring Defendant to train all of its managers and supervisors about the Equal Pay Act and sex discrimination in the workplace;

6. An order from this Court appointing a monitor to ensure that Defendant complies with the injunction provisions of any decree that the Court orders;

7. Declaratory relief stating that Defendant discriminated against Plaintiff in violation of federal law;

8. An award of interest, costs and reasonable attorney fees; and

9. Whatever other equitable relief appears appropriate at the time of final judgment.

/s/Deborah L. Gordon (P27058)
Benjamin I. Shipper (P77558)
Irina L. Vaynerman (0396759)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220

16

            Bloomfield Hills, Michigan 48304
            (248) 258-2500
            dgordon@deborahgordonlaw.com
            bshipper@deborahgordonlaw.com
            ivaynerman@deborahgordonlaw.com

Dated: January 11, 2017

## JURY DEMAND

Plaintiff Heather Anger, by her attorneys **Deborah Gordon Law**, hereby demands a trial by jury of all the issues in this cause.

            /s/Deborah L. Gordon (P27058)
            Benjamin I. Shipper (P77558)
            Irina L. Vaynerman (0396759)
            Attorneys for Plaintiff
            33 Bloomfield Hills Parkway, Suite 220
            Bloomfield Hills, Michigan 48304
            (248) 258-2500
            dgordon@deborahgordonlaw.com
            bshipper@deborahgordonlaw.com
            ivaynerman@deborahgordonlaw.com

Dated: January 11, 2017